MORRILL v. DETROIT & MACKINAC RAILWAY CO.

1. NEGLIGENCE — WARNING SIGNALS — INSTRUCTIONS TO JURY — RAILROADS.
   All question of the defendant's failure to warn the plaintiff, an employé of a distinct corporation, who was stationed on defendant's logging train unloading timber, was withdrawn from the jury by an instruction that no warning was necessary, because the plaintiff knew the train was about to start.

2. SAME—CUSTOM AND USAGE—OPERATION OF RAILROAD CARS.
   Testimony concerning the usual movement and jerking of the cars was competent to refute the defendant's theory and evidence that the usual and ordinary motion of the cars caused the injury.

3. SAME—JERKING CARS IN STARTING.
    It was sufficiently favorable to the defendant to charge the jury that, if the engineer started the train in the manner that an ordinarily prudent engineer would have done, there was no negligence.

Error to Alpena; Emerick, J. Submitted June 10, 1909. (Docket No. 48.) Reargued January 10, 1910. Decided February 3, 1910.

Case by Thomas Morrill against the Detroit & Mackinac Railway Company for personal injuries. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Charles R. Henry* (*James McNamara*, of counsel), for appellant.

*I. S. Canfield*, for appellee.

OSTRANDER, J. Plaintiff was an employé of the Thunder Bay Boom Company, and defendant railway company was hauling logs from various lumbermen, which were unloaded from its cars by employés of the boom company. On September 16, 1907, when he had been employed for about six weeks, plaintiff was one of six men engaged in unloading logs from a train of 15 cars, 3 cars being unloaded at one time; one man being stationed at each end of each car. The method was to place the cars on the railroad bridge, and, as 3 were unloaded, to move the train so as to bring three other cars into position for unloading. Twelve cars had been unloaded, and the plaintiff had passed to the rear end of the rear car, and stood there awaiting the movement of the train. It is averred in the declaration that it was the duty of the defendant to so run, move,—

" Operate, and handle its said locomotives, log cars, and log trains that the said employés of said Thunder Bay Boom Company, while so unloading said log cars into said river, would have a reasonably safe place to work,

and not start or stop such locomotives, log cars, or log trains so negligently, violently, or suddenly as to jerk said men in the said employ of said boom company, as aforesaid, from said log trains or log cars to said bridge or the ground, and to run, operate, and move said trains of log cars at the place aforesaid, while being so unloaded as aforesaid, without negligence, and with reasonable care, so that the men so employed as aforesaid would not be jerked or thrown about or from said cars and injured; that it was the duty of said defendant and its engineers, conductors, and employés of said defendant, when in charge of the running or moving of such log trains, at the place aforesaid, while such logs were being unloaded as aforesaid, when such trains were standing on such bridge for the purpose aforesaid, to warn said men so engaged, as aforesaid, before starting such trains, and after such warning to start and stop such trains with reasonable care, so as not to jerk or throw such men at work, as aforesaid, around or from said trains to said bridge or to the ground, and cause them to be injured."

The negligence of defendant averred is that, disregarding its duty,—

"And, without giving said plaintiff warning that it was about to move said train, started said train and cars up so quickly and violently and negligently that plaintiff, while using due care and diligence, and without any fault or negligence on his part, was jerked and thrown from one of said defendant's cars to the said bridge and ground."

Upon the subject of warning—giving notice that the train was to be moved—the court said to the jury:

"Now, gentlemen, that man was so thoroughly apprised of the fact that they were about to start that train that it would have been idle ceremony for any one to have said to him, 'We are about to start,' or ring a bell or blow a whistle. From some source, either what he saw, or for some reason, he had had his attention completely fixed upon the fact that that train was about to start, and therefore the question of whether he had any warning that the train was about to start or not is of no earthly importance in this case."

All question of a failure to give notice that the train

was to be moved was thus eliminated favorably to defendant's contention. There remained the questions of defendant's negligence in moving the train, and of the plaintiff's negligence.

Plaintiff, upon his cross-examination, testified:

" I had hold for an ordinary start. There was nothing back of me to protect me from falling off. I don't remember whether I fell between the rails or on the outside of the rails. When I found that I was falling, I tried to jump; put my foot back to catch myself. I stepped back right off the end of the car trying to save myself."

When the plaintiff rested his case, counsel for the defendant moved for a directed verdict, in presenting which motion he said, among other things, that while there may have been, upon the occasion in question, a considerable jerk in starting the train, it could not be started without a jerk, that the trainmen were handling the train as they ordinarily handled it, and that no person in the position that the plaintiff occupied could avoid the danger of being knocked off by the sudden starting of the train. In overruling the motion the court said that undoubtedly the plaintiff had been employed for such a length of time that he assumed the ordinary risks—the risk of being thrown from the train by any ordinary jerk—but that there might be a degree of negligence on the part of defendant that would absolve plaintiff. If the train was started with an outrageous jerk, entirely outside of the ordinary movement, plaintiff would not be held to have assumed the risk.

It is upon the admission of testimony showing the manner in which the trains had theretofore been moved, and upon the charge of the court which is said to have permitted the jury to determine the fact of defendant's negligence, and the fact of plaintiff's contributory negligence, or want of negligence, by a comparison of the manner in which the train was moved upon the particular occasion and the manner in which the trains had theretofore been moved, that the assignments of error relied upon are based.

Plaintiff was not an employé of the defendant. It was the theory of defendant that, whatever the movement of the log train upon the occasion in question, it was the usual movement, to which plaintiff had become accustomed, and with reference to which he ought to have acted. And while it was also claimed that the train was, upon the particular occasion, moved in a prudent manner, it was not error, in view of this theory, to admit testimony which tended to prove the manner in which the train had usually been moved.

The charge, considered as it must be in its entirety, is not open to the criticism which is made. It is favorable to defendant in presenting to the jury the duty of the plaintiff to conduct himself with regard for the movements of the train with which he had become acquainted. It was distinctly favorable to defendant in requiring the jury to find that the train was started with a much greater degree of force than had been usual. But the rule is stated, and is repeated, that if the engineer upon this occasion started the train in the manner that an ordinarily prudent engineer would have done, there was no negligence. If he did not, but "started it with a degree of force and speed, and a jerk, that an ordinarily prudent engineer would not have done under the circumstances, the defendant would be negligent."

No error appears, and the judgment is therefore affirmed.

MONTGOMERY, C. J., and HOOKER, MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.